Nott, J.,
delivered the opinion of the court:
Mr. Charles M. Shelley occupied a seat in Congress from the 5th December, 1881, to the 20th July, 1882. Mr. James Q. Smith contested the seat from the 5th December to 12th May.
Mr. Smith then died, but the contest did not die with him, for on the 20th July, 1882, the House decided as follows:
“Resolved,, That Charles M. Shelley was not elected as a Representative to the Forty-seventh Congress from the fourth Congressional district of Alabama, and is not entitled to retain the seat which he now occupies in this House.
“Resolved, That James Q. Smith was duly elected as a Representative from the fourth Congressional district of Alabama to the Forty-seventh Congress, and, having deceased, the seat is declared vacant.”
In November, 1882, an election was held to fill the vacancy, and the claimant was elected. We speak of the claimant as if ho were a distinct person from the Mr. Shelley who occupied the seat from December, 1881, to July, 1882, for it is manifest that the claimant’s rights are the rights of one elected to fill a vacancy, neither more nor less, and that they can neither be enlarged nor lessened by the fant that he was a party to the former contest. The same law is applicable to him that would be applicable to any other successor.
Upon general principles of law, if the claimant had been elected to an executive or judicial office he would have been entitled to the salary of that office either from the time of his election thereto or from the time of his induction therein.
But in the case of members of Congress another rule has been established, which is to be found in the Revised Statutes, and is in these words:
“Sec. 51. Whenever a vacancy occurs in either house of Congress, by death or otherwise, of any Member or Delegate elected *655 or appointed thereto after the commencement of the Congress to which he has been elected or appointed, the person elected or appointed to fill it shall be compensated and paid from the time that the compensation of his predecessor ceased.”
In administering this, statute, the accounting officers have awarded to the claimant the salary of a member from the 20th of July, 1882, when the seat was declared vacant. By this suit the claimant contends that he was entitled to the salary of a member from the 12th May, when Mr. Smith died.
The controversy, therefore, turns upon the meaning of the word “predecessor” in the section of the statutes just quoted. On the part of the accounting officers it is maintained that Mr. Shelley was the claimant’s predecessor; on the part of the claimant it is said, “ His predecessor was the person who was duly elected at the election in November, 1880. It is the election that entitles the party to the office. The House of Representatives, which is made by the Constitution the judge of the elections, returns, and qualifications of its own members, declared that James Q. Smith was duly elected, and, having deceased, the seat was vacant. This being so, the vacancy occurred by reason of Smith’s death and at the time of his death. The law provides that his successor shall be paid from the time the compensation of the deceased member ceased. This ceased at his death.”
Here, it is to be noted that under another provision of the Revised Statutes (section 38) Mr. Shelley, as the sitting member and “the holder of a certificate of election,” who had been “ sworn in as a member,” was entitled to be paid monthly, and was in fact j)aid up to and including the 20th July, when his seat was declared vacant; and it is likewise to be noted that under the Appropriation Act, 3d March, 1883 (23 Stat. L., 632), the widow of Mr. Smith was paid the salary of a member up to the 12th May, when his death took- place.
Recurring now to,the words of the statute, we find that they refer to other vacancies than those caused by death; “ whenever a vacancy occurs by death or otherwise ” are the words. Yacancies may occur by death, by resignation, by expulsion; they may also occur by other action of the House; and the term “otherwise” is a comprehensive one, intended to cover all other causes.
*656 What was the cause of that vacancy which the claimant was elected to fill, the death of Mr. Smith or the action of the House?
To the court it seems manifest that no vacancy was caused by the death of Mr. Smith; that no election to choose his successor could have been held upon the event of his death; that ho could have had no successor to a place which he never possessed himself, and that he could have been a predecessor in nothing save an abstract right which had not even the attributes of a chose in action. The perplexity in this case has arisen probably from the use of the terms “member de jure” and “ member de facto; ” but from a legal point of view Mr. Smith was never a Representative in Congress. The most that can be maintained is that he ought to have been, and that Mr. Shelley ought not to have been; but that is nothing more than saying that Mr. Smith ought to have been the claimant’s predecessor, but was not, and that Mr. Shelley ought not to have been the claimant’s predecessor, but was.
The resolutions of the House did nothing more than declare the seat vacant and give a reason therefor. The reason did not effect anything. The declaration that Mr. Smith had been duly elected conferred no legal right upon Mr. Smith or his heirs; it would not ipso facto have made him a Representative if he had been living; but would merely have vacated the seat and declared that he might come forward and fill it if he would. Until he did so he would never have become a Representative in Congress.
One or two illustrations will, we think, render this clear.
1. It has been argued on the part of the claimant that no one but “the person duly elected” could be a predecessor within the meaning of the statute, and hence that Mr. Smith was the claimant’s predecessor and Mr. Shelley was not, and consequently that the cause of the vacancy was the death of Mr. Smith and not the ouster of Mr. Shelley. But let it be supposed that neither Mr. Smith nor Mr. Shelley had been duly elected, who then would have been the claimant’s predecessor in that Congress ? Would he have been without a predecessor, and therefore not entitled to the benefit of the statute ? And would he have been elected to fill a vacancy which had occurred without a cause ? In other words, it is apparent that *657 the predecessor referred to in the statute is not necessarily a duly elected predecessor, legally entitled to the seat.
2. The statute does not make an indiscriminate provision for the payment of members of Congress. It apportions one salary to each district or seat and its plain purpose is that the whole of that one salary shall go to the member, or successive members, who represent that district, or occupy that seat, and that no part of the salary shall fall back into the Treasury. But the statute makes no further provision than this, and does not undertake to pay both sitting and contesting members — both member de jure and member de facto. If then we can find from the statute who is the person entitled to be paid pending the contest for the seat, we shall know who is the predecessor within the true intent of the statute.
The answer to this question has been already given. The statute provides for thepayment of the sitting member and provides nothing for the duly elected member. In this particular case, for instance, Mr. Shelley, as sitting member, was lawfully entitled to receive the pay of the seat while he sat in it, but Mr. Smith was entitled to nothing. What Congress subsequently paid to his widow was a matter of special legislation— a gift, and not a right. The law concerning public officers is, “that those dealing with officers clothed with an apparent title should be protected, and that they should not be compelled to go beyond that and trace the title to its source. The case óf the government paying a salary to an officer de facto is within the same protection.” “This does not deprive the person who has been wrongfully deprived of his office of a remedy. He may recover his damages for the wrong against the usurper.” (Dolan v. The Mayor, 68 N. Y. R., 274.) Reasoning from the analogy, we must hold that if the claimant is entitled to the salary which he now seeks to recover his only remedy is- to sue Mr. Shelley for it. In a word, the statute does not intend that the government shall pay. two salaries for the same seat at the same time; and the term “predecessor” must be restricted to him who was predecessor, not in abstract right by virtue of a legal election, but predecessor in the matter of the salary of the'place.
The judgment of the court is that the petition be dismissed.